IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY OF CONNECTICUT; MARINPAK MPK SONOMA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> COLMA DRAYAGE, INC.; DEVINCENZI TRUCKING, INC.; FREDRICK SHUMATE dba SHUMATE ENTERPRISES, LLC; and DOES 1-20, inclusive, <br><br> Defendants. | Case No. 09-3118 SC <br><br> ORDER DENYING MOTION TO DISMISS THIRD-PARTY COMPLAINT |
| DEVINCENZI TRUCKING, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> CARRIX, INC., and its subsidiary, SSA MARINE INTERNATIONAL, <br><br> Third-Party Defendants. | |

## I. INTRODUCTION

Now before the Court is the Motion to Dismiss Third-Party Complaint ("Motion") filed by third-party defendants Carrix, Inc., and SSA Marine International (collectively, "Carrix"). Docket No. 48. Carrix seeks to dismiss the Third-Party Complaint filed against them by defendant and third-party plaintiff Devincenzi Trucking, Inc. ("Devincenzi"). Docket No. 36 ("Devincenzi Compl."). The Motion is fully briefed. Docket Nos. 62 ("Opp'n"),

65 ("Reply"). Having considered the papers submitted by each party, the Court concludes that this matter is appropriate for determination without oral argument. For the reasons stated below, the Court DENIES Carrix's Motion.

**II. BACKGROUND**

This suit began with a Complaint in Subrogation filed by Plaintiff Travelers Indemnity Company of Connecticut ("Travelers"), which is the insurer for Marinpak MPK Sonoma, Inc. ("Marinpak"), a food processor located in Sonoma, California. Docket No. 1 ("Travelers Compl.") at 3. According to Travelers, Marinpak ordered a particular piece of machinery from a French manufacturer that was designed and built to specifications for Marinpak's Sonoma facility. Id. The machinery was shipped from France to Oakland as cargo that "consisted of one standard container holding three packed crates and another flat rack container holding two packed crates." Id. Travelers states that it successfully arrived in Oakland, California. Id.

After the cargo arrived in Oakland, Marinpak contacted Colma Drayage, Inc. ("Colma"), to secure transportation for the machinery from Oakland to its Sonoma facility. Id. According to Travelers, Colma arranged for Devincenzi to pick up and transport the machinery, and Devincenzi in turn arranged for Shumate Enterprises, LLC ("Shumate") to pick up and transport the machinery. Id. The machinery was loaded onto a truck. Id. While the machinery was being transported by truck from Oakland to Sonoma, one of the crates struck a highway overpass and damaged critical components of the machinery. Id. According to the Complaint, Travelers had to

pay a total of $764,059.28 to Marinpak to replace the machinery, and Marinpak sustained uninsured business losses totaling $465,276.63. Id. at 4. Travelers and Marinpak filed this action against Colma, Devincenzi, and Shumate, alleging violation of the Carmack Amendment, 49 U.S.C. § 14706.

Devincenzi thereafter filed a third-party complaint against Carrix and its wholly-owned subsidiary, SSA Marine International. See Devincenzi Compl. ¶¶ 1-2. Devincenzi alleges that Carrix provides "marine terminal and transportation services, including such services to some or all of the parties to the [Travelers] Complaint In Subrogation," and that any liability that Devincenzi incurs in the underlying suit is the result of "the active and primary negligence or otherwise wrongful conduct of [Carrix] in connection with the handling of the freight . . . ." Id. ¶¶ 6, 8. As Devincenzi explains more clearly in its Opposition to Carrix's Motion, Carrix "got the load, including its flat rack, ready to be hooked up to the truck-tractor that was to haul the cargo to Sonoma County. Once the load was ready to be hauled, Shumate hooked up its truck-tractor and hauled the load away from the Port of Oakland," only to strike a freeway overpass before reaching its destination. Opp'n at 1-2.

Although this Court clearly has subject matter jurisdiction over Travelers' claim under the Carmack Amendment, Carrix argues that this Court lacks jurisdiction over Devincenzi's third-party complaint for indemnification, on the basis that the complaint involves a separate "occurrence" from the facts that constitute Travelers' Carmack claim. Mot. at 6-9. Carrix filed the Motion that is now before the Court to challenge this Court's subject

3

matter jurisdiction over the Devincenzi Complaint.

III. **LEGAL STANDARD**

As a court of limited jurisdiction, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989). When a defendant submits a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Plaintiff bears the burden of establishing the propriety of the court's jurisdiction. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack on subject matter jurisdiction, the defendant challenges the basis of jurisdiction as alleged in the complaint. Id. In such a case, the court may assume that the factual allegations in the complaint are true, and draw all reasonable inferences in the plaintiff's favor. See Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

IV. **DISCUSSION**

By its Opposition, Devincenzi effectively concedes that there is no basis for subject matter jurisdiction over its third-party Complaint, except through supplemental jurisdiction obtained under 28 U.S.C. § 1367(a). Opp'n at 3. This Court agrees that Devincenzi's allegations are insufficient to establish diversity jurisdiction, and that the claim does not give rise to a significant federal question. The Court therefore has jurisdiction

over Devincenzi's claim only if it is "so related" to claims that are within the original jurisdiction of this Court "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

There is no question that this Court has original jurisdiction over Travelers' claim against Devincenzi and the other primary defendants. This is a claim brought under the Carmack Amendment, 49 U.S.C. § 14706, which "is the exclusive cause of action for interstate shipping contract claims, and it completely preempts state law claims alleging delay, loss, failure to deliver and damage to property." White v. Mayflower Transit, L.L.C., 543 F.3d 581, 584 (9th Cir. 2008).[1] This statute holds any carrier or freight forwarder liable "for the actual loss or injury to the property" caused by any carrier "whose line or route the property is transported in," or who received or delivered the property. 49 U.S.C. § 14706(a).

> Carmack effectively codified the strict liability rule that governed the liability of common carriers at common law. Once the shipper establishes a prima facie case of Carmack liability by showing delivery in good condition, arrival in damaged condition, and the amount of damages, the carrier is liable for the actual loss or injury to the property it transports, unless there is an available defense.

Sompo Japan Ins. Co. of Am. v. Union Pac. R.R., 456 F.3d 54, 59

---

[1] Although the accident occurred during transportation between Oakland, California, and Sonoma County, California, "the Carmack Amendment applies to the inland leg of a [foreign] shipment even if that leg is fully intrastate." Chubb Group of Ins. Cos. v. H.A. Transp. Sys., 243 F. Supp. 2d 1064, 1068 n.3 (C.D. Cal. 2002) (citing Project Hope v. M/V IBN Sina, 250 F.3d 67, 70-71, 73 (2nd Cir. 2001)). In addition, the Court notes that Travelers' claim is well over the $10,000 jurisdictional minimum set by 28 U.S.C. § 1337(a).

(2nd Cir. 2006) (citations and internal quotation marks omitted).

The question now before the Court is whether Travelers' Carmack claim against Devincenzi and the other defendants "form part of the same case or controversy" as Devincenzi's indemnity claim, which is "predicated on the active and primary negligence or other wrongful conduct" of Carrix. Put otherwise, this Court will have jurisdiction only if the two claims "derive from a common nucleus of operative fact." See Carpenters Health & Welfare Trust Fund v. Tri Capital Corp., 25 F.3d 849, 852-53 (9th Cir. 1994) overruled on other grounds by S. Cal. IBEW-NECA Trust Funds v. Std. Indus. Elec. Co., 247 F.3d 920, 928-29 (9th Cir. 2001) (equating standard in 28 U.S.C. § 1367(a) with "common nucleus" standard articulated in United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

Carrix rests its argument primarily on one case, that of Galt G/S v. Hapag-Lloyd AG, 60 F.3d 1370 (9th Cir. 1995). Galt was an admiralty action in which Galt, the insurer for Safeway Stores, sued carrier Hapag-Lloyd for damage to 2160 tins of ham that had been transported from Denmark to California. Id. ¶ 1372. Safeway did not discover that the ham was frozen and spoiled until well after delivery, and after it had been stored in Safeway's own facilities for more than a week. Id. Hapag-Lloyd claimed that none of the carriers could have frozen the ham, and the district court allowed Hapag-Lloyd to bring a third-party claim against Safeway. Id. After a bench trial, the district court awarded judgment to Hapag-Lloyd, and the Ninth Circuit reversed, citing the lack of supplemental jurisdiction over Hapag-Lloyd's claim:

> We conclude that the cargo damage claim and the

>                   ancillary claims arise from different
>                   occurrences. The alleged occurrence in the cargo
>                   damage claim is whether Hapag-Lloyd or one of the
>                   carriers mishandled the ham during shipment; the
>                   alleged occurrence in the indemnification claim
>                   is whether Safeway stored the ham improperly.
>                   The two occurrences are separated by the
>                   carriers' relinquishing control over the hams.
>                   They are also separated in time. Accordingly,
>                   the district court erred in exercising ancillary
>                   jurisdiction over the California indemnification
>                   claims against Safeway.

Id. at 1374.

According to Carrix, Galt controls the outcome of this Motion because "there can be no legal connection or relationship between [Carrix] 'handling' the cargo, and a motor carrier driving the cargo into a bridge" because "these two discrete occurrences are so far removed in time and in location that they cannot be said to form 'part of the same case or controversy . . . .'" Mot. at 8-9. This Court disagrees.

Galt does prevent this Court from finding that the two claims "form the same case or controversy" on the sole basis that they involve two theories as to the factual cause of a single injury. See 16 James Wm. Moore et al., Moore's Federal Practice § 106.24[6] (3rd ed. 1999) (noting that Galt "seem[s] to reject, or at least ignore, a single-injury approach with regard to multiple causation"). However, Galt does not stand for the proposition that a carrier's claims against a third party will always form a separate case or controversy. The relationship apparent here, between Devincenzi's claim and Travelers' claim, is stronger than the relationship that existed in Galt, between Hapag-Lloyd's allegations and Galt's allegations. In Galt, Hapag-Lloyd and Galt each expounded an independent theory as to how the ham was, in

fact, damaged.  The facts necessary to prove one theory (damage in transit) were separate from the facts needed to prove the competing theory (damage in Safeway's storage).  Damage that was caused in storage bore no causal relationship to damage that occurred in transit.  In contrast, both Travelers and Devincenzi allege that Marinpak's machinery was damaged when it hit the overpass.  There is a direct causal link between Carrix's alleged negligence and the event that, all parties agree, caused the injury.  Devincenzi merely alleges an additional link in the causal chain that lead to that injury (i.e., Carrix's negligence), and not an independent chain that preludes Devincenzi's own involvement or liability. This is a claim that a third party's negligence contributed to an injury that clearly occurred during carriage, rather than a claim that a third party's acts independently caused that injury after carriage.  The Court finds that Devincenzi's claim bears "a common nucleus of operative fact" with Travelers' claim, and is related enough to support supplemental jurisdiction over Devincenzi's Complaint.

The Court also notes that Carrix's Reply contains a number of arguments that go to the merits of Devincenzi's claim, to show that "Devincenzi has no legal basis to assert a state law indemnity claim against Carrix/SSA for this loss."  Reply at 4-5.  These arguments include citations to the California Vehicle Code and cases applying indemnity principles in similar situations.  Id. These arguments go well beyond the jurisdictional arguments set out in Carrix's initial Motion.  Devincenzi may not, in its Reply, present new arguments that have the effect of converting its 12(b)(1) motion into a 12(b)(6) motion.  Devincenzi has had no

opportunity to respond to these arguments, and this Court therefore does not consider Carrix's arguments on the merits.

Devincenzi has also indicated that it has discovered that "the actual entity in charge of the terminal and dock at the Port of Oakland was a California entity, SSA Terminals (Oakland), LLC," and it has requested leave to file an amended third-party complaint that also names this party as a defendant. This Court should freely give such leave when justice requires. Fed. R. Civ. P. 15(a)(2). Carrix's only objection is that amendment would be futile because this Court lacks subject matter jurisdiction over Devincenzi's claim -- an argument that the Court rejects for the reasons stated above. Devincenzi is therefore granted leave to amend its third-party complaint.

**V.  CONCLUSION**

Carrix's Motion to Dismiss is DENIED. In addition, Devincenzi's request for leave to amend its third-party complaint is GRANTED. Devincenzi must file the amended third-party complaint within seven (7) days of the date of this Order.

IT IS SO ORDERED.

Dated: March 15, 2010

_____
UNITED STATES DISTRICT JUDGE

9